J-S30011-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT JERMAINE BAILEY, | |
| Appellant | No. 1086 WDA 2017 |

Appeal from the Judgment of Sentence Entered May 24, 2017
In the Court of Common Pleas of Greene County
Criminal Division at No(s): CP-30-CR-0000177-2015

BEFORE:  BENDER, P.J.E., STABILE, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED AUGUST 23, 2018**

Appellant, Robert Jermaine Bailey, appeals from the judgment of sentence of an aggregate term of 5 to 10 years' incarceration, imposed after he was convicted of multiple offenses, including persons not to possess a firearm, terroristic threats, and simple assault.  We affirm.

Appellant's convictions stem from an altercation he had with two women, Tiffany Presher and Jennifer Colina, who were staying at the same residence as Appellant and another man, Daniel Brown.  According to Presher's trial testimony, she and Colina were sleeping in a bedroom when Appellant, who had been cleaning another room in the home, entered the bedroom and began screaming at the two women "to get up and help clean…."

_____

[*] Retired Senior Judge assigned to the Superior Court.

N.T. Trial, 1/26/16, at 56.  Presher claimed that Colina started arguing with Appellant, and Colina then "tried calling 911 twice, but got disconnected both times."  *Id.*  Colina also tried to "record [Appellant] yelling at [them,]" at which point Appellant "smacked [Colina's] arm and knocked the phone out of her hand."  *Id.*

Colina then told Appellant she was going to call the police, at which point Appellant left the room and immediately came back in with "a little black handgun."  *Id.* at 57.  Appellant pointed the gun in the direction of Presher and Colina and told the women that if they called the police, "he was going to shoot [them] in [their] faces."  *Id.* at 56, 58.  Presher stated that as Appellant pointed the gun at her, she was scared.  *Id.* at 58.  She also testified that as she and Colina tried to leave the house, Appellant told them that if they went to the police and he was arrested, he "was going to send the word to the street for [them] both to get killed."  *Id.* at 59.  Presher testified that she and Colina escaped the house and began walking toward the police station, hiding between buildings as they went.  *Id.* at 59, 60.  Presher explained that Colina "was … scared to go to the cops," but as the women were walking, they saw a police officer, "flagged him down[,] and told him … what was going on."  *Id.* at 59.

That police officer was Bryan Smith of the Cumberland Township Police Department.  *Id.* at 123.  Officer Smith testified that when Presher and Colina stopped him and reported the above facts, he called for assistance and then traveled to the house where the incident occurred.  *Id.* at 124.  There, he

spoke with Daniel Brown, who told the officer that Appellant had left. *Id.* at 125. Having been provided a description of Appellant by Presher and Colina, Officer Smith began canvassing the area. *Id.* at 126. The officer spoke to neighbors who directed him to the back of a house where he encountered Appellant, who matched the description provided by Presher and Colina. *Id.* at 128. Officer Smith announced his presence and told Appellant to stop, but Appellant ran through a yard and jumped over a fence at the back. *Id.* Officer Smith pursued Appellant while repeatedly telling him to stop, but the officer lost sight of him in the nearby woods. *Id.*

Other officers who had responded to the scene also began searching for Appellant, who was eventually found inside the "basement of a building that had several apartments attached to it and also a business." *Id.* at 129, 134. Appellant was placed under arrest and searched, which revealed a clear baggie containing marijuana in his pocket. *Id.* at 137.

Meanwhile, Officer Smith received a radio report that Thomas Berry, who lived in a residence close to where the officer had first observed Appellant, had found a gun in his yard. *Id.* at 129, 138. Officer Smith went to Berry's home and secured the gun, which "was in two separate parts [lying] in a corner … inside of [Berry's] fence in his yard." *Id.* at 129, 130. Officer Smith was shown the weapon at trial and identified it as the gun he had found in Berry's yard. *Id.* at 130.

Berry also testified at Appellant's trial. He explained that on the day of the above-described incident, he heard a commotion outside and "saw Officer

Smith running through the yard yelling for someone to stop." *Id.* at 68. When Officer Smith was out of sight, Berry saw that "something was [lying] by [his] fence that wasn't there just ten minutes ago" when he had been in his yard with his dogs. *Id.* Berry went outside to look at the object and realized it "was a pistol…." *Id.* He called 911 and Officer Smith returned to recover the weapon. *Id.*

At the close of Appellant's trial, the jury convicted him of single counts of burglary, 18 Pa.C.S. § 3502(a)(2); persons not to possess a firearm, 18 Pa.C.S. § 6105(a)(1); possession of marijuana, 35 P.S. § 780-113(a)(31)(i); and harassment, 18 Pa.C.S. § 2709(a)(1). The jury also found Appellant guilty of two counts each of terroristic threats, 18 Pa.C.S. § 2706(a)(1); recklessly endangering another person, 18 Pa.C.S. § 2705; and simple assault, 18 Pa.C.S. § 2701(a)(3).[1] Appellant was initially sentenced to 8 to 16 years' incarceration for these offenses; however, after he filed post-sentence motions, the court entered a judgment of acquittal for Appellant's convictions of burglary and recklessly endangering another person. Accordingly, Appellant was resentenced on May 24, 2017, to an aggregate term of 5 to 10 years' imprisonment.

_____

[1] The jury acquitted Appellant of criminal trespass, 18 Pa.C.S. § 3503(a)(1)(ii); carrying a firearm without a license, 18 Pa.C.S. § 6106(a)(1); theft by unlawful taking, 18 Pa.C.S. § 3921(a); receiving stolen property, 18 Pa.C.S. § 3925(a); and possession of drug paraphernalia, 35 P.S. § 780-113(a)(32). Another charge of flight to avoid apprehension, 18 Pa.C.S. § 5126(a), was *nol prossed* prior to trial.

- 4 -

Appellant again filed a timely post-sentence motion, which the court denied. He then filed a timely notice of appeal, and he also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court filed a Rule 1925(a) opinion on August 29, 2017, relying, in part, on prior orders and opinions it had issued in ruling on Appellant's post-sentence motions.

On appeal, Appellant presents six issues for our review, which we have reordered for ease of disposition:

1. Whether the trial court erred in failing to grant a mistrial, after two jurors saw … Appellant while incarcerated or handcuffed, and counsel informed one juror that … Appellant was being escorted by the sheriff.

2. Whether the trial court erred in permitting police officers to testify to expert opinions regarding the alleged firearm, its operability, and whether it was in fact the "frame or receiver" of a firearm.

3. Whether the trial court erred in sustaining the Commonwealth's objection to the presentation of character evidence regarding the truthful and non-violent character of … Appellant by Tina Krupa.

4. Whether the trial court erred in denying trial counsel's motion to dismiss the charges against … Appellant relating to Jennifer Colina, as … Colina did not testify.

5. Whether the evidence in this case was insufficient to sustain the verdict.

6. Whether the verdict in this case was against the weight of the evidence.

Appellant's Brief at 8.

Appellant first argues that the trial court erred by failing to grant a mistrial after one juror, who was a county maintenance worker, encountered

- 5 -

Appellant in a cell in the prison through the course of the juror's job, and another juror purportedly saw Appellant in handcuffs and being escorted by a sheriff after jury selection. Appellant acknowledges that the trial court excused both of these jurors. *See* Appellant's Brief at 22. He avers, however, that the court erred by not conducting any "investigation" into whether either of these jurors talked with the other members of the jury panel about seeing Appellant incarcerated or in handcuffs. *Id.* According to Appellant, "[i]n the absence of conducting an investigation into whether any other juror was notified of [these] fact[s], the [c]ourt should have granted a mistrial, and … Appellant should have been permitted to select a new, untainted jury." *Id.*

Notably, Appellant does not cite to where in the record he requested a mistrial or asked that the court conduct further investigation into what the at-issue jurors may have told the other members of the jury. Our review of the record shows that, just prior to the start of trial, the court and the parties discussed the two jurors who were allegedly tainted, those jurors were questioned, and the court ultimately granted Appellant's request to dismiss both. *See* N.T. Trial, 1/26/16, at 3-13. Appellant never requested a mistrial or any examination of the remaining jury members. Accordingly, he cannot now complain that the trial court failed to conduct that investigation, or grant a mistrial, when he made no such requests to the court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

In Appellant's next issue, he argues that the court erroneously allowed a lay witness - Police Officer Thomas Obarto - to offer expert testimony "regarding the alleged firearm, its operability, and whether it was in fact the 'frame or receiver' of a firearm." Appellant's Brief at 23 (emphasis omitted). Again, Appellant has waived this issue for our review. First, as Appellant concedes, he did not object when the officer was testifying about the firearm. *See* Appellant's Brief at 26; *see also* N.T. Trial at 167-74. Indeed, much of the officer's testimony about the gun was elicited by defense counsel on cross-examination. *Id.* at 169-174.

Second, while Appellant attempts to excuse his failure to object to the officer's testimony by claiming that "the [c]ourt made a ruling on this matter prior to trial," he clearly misconstrues the record. Appellant's Brief at 26. Prior to trial, the court did remark that "somebody with lay experience who knows something about guns" could testify about the operability of a firearm. N.T. Trial at 26. However, this comment was made during a discussion with the parties about the whether the Commonwealth had to prove that the gun was operable. *See id.* at 26-28. The court's remark was not in response to any discussion about whether Officer Obarto had to be qualified as an expert to offer testimony about the gun. Therefore, because Appellant never raised any objection to Officer Obarto's testimony about the firearm prior to trial, or at the time when that testimony was given, he has waived this issue for our review. *See* Pa.R.A.P. 302(a).

Next, Appellant asserts that the trial court improperly excluded character evidence offered during the direct-examination of Appellant's fiancé, Tina Krupa. Specifically, Krupa testified:

> [Ms. Krupa:] I would just like to say that, you know, [Appellant], he's a really good guy. He's good at heart. And my children love him more than anything. And I love him. And I believe him and I believe in --

N.T. Trial at 203. At that point, the Commonwealth objected to Krupa's testimony, and the court sustained the objection and directed "the jury to disregard the last statement." ***Id.***

Appellant now avers that, "[w]hile certainly the statements about [] Krupa's love for … Appellant and her personal opinion about him were inadmissible, the remaining statements should not have been struck, as they were permissible character evidence pursuant to Pa.R.E. 405…." Appellant's Brief at 29. Rule 405 states, in pertinent part:

> **(a) By Reputation.** When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation. Testimony about the witness's opinion as to the character or character trait of the person is not admissible.
>
> > (1) On cross-examination of the character witness, the court may allow an inquiry into relevant specific instances of the person's conduct probative of the character trait in question.
> >
> > (2) In a criminal case, on cross-examination of a character witness, inquiry into allegations of other criminal conduct by the defendant, not resulting in conviction, is not permissible.

Pa.R.E. 405(a).

Appellant does not specifically identify which of Krupa's above-quoted statements was admissible under Rule 405, but we presume he is referring to

her testimony that she "believe[d] him." N.T. Trial at 203. Appellant offers no discussion of why this statement by Krupa was admissible, nor any legal authority that would support that position. Clearly, the entirety of Krupa's testimony about her love for Appellant, his character of being a 'good guy,' and her belief in his innocence, constituted her own personal opinion about Appellant's character, which was not admissible reputation evidence under Rule 405. Therefore, we discern no abuse of discretion in the court's decision to preclude Krupa from further testifying in this vein, and to instruct the jury to disregard her prior statements. *See Commonwealth v. Young*, 989 A.2d 920, 924 (Pa. Super. 2010) ("Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion.") (citation omitted).

Appellant's fourth and fifth issues are interrelated and, thus, we will address them together. Appellant argues that the trial court should have dismissed his convictions of one count of terroristic threats, and one count of simple assault, committed against victim Jennifer Colina, because Colina did not testify at trial and, thus, there was insufficient evidence to support those charges. We disagree.

> When examining a challenge to the sufficiency of evidence, our standard of review is as follows:
>
>> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every

element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Beasley**, 138 A.3d 39, 45 (Pa. Super. 2016) (internal citations omitted).

In **Beasley**, we explained that,

[f]or a defendant to be convicted of terroristic threats,

the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror. Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense. Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security.

**Id.** at 46 (internal citations and quotation marks omitted). Additionally, "a person is guilty of [simple] assault if he … attempts by physical menace to put another in fear of imminent serious bodily injury[.]" 18 Pa.C.S. § 2701(a)(3).

Here, Appellant contends that without Colina's testimony, there was no evidence to establish "that the threats allegedly made by … Appellant had actually been communicated, or that they seriously impaired [Colina's] personal security." Appellant's Brief at 35. He also maintains that because Colina did not testify, the Commonwealth did not present "any credible evidence that the alleged actions of … Appellant would have placed [Colina] in fear of imminent serious bodily injury…." *Id.*

Appellant's arguments are unconvincing. Notably, he cites no legal authority to support his position that a victim must always testify in order for the Commonwealth to establish the elements of a crime. As set forth *supra*, "[the Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Beasley*, 138 A.3d at 45 (citation omitted). Here, the Commonwealth proved the elements of terroristic threats and simple assault against Colina through Tiffany Presher's testimony. Namely, Presher testified that Appellant pointed a gun at her and Colina, and verbally threatened to shoot them in the face if they called police. Presher also testified that Colina twice tried to call 911 during the argument with Appellant and that, after the women escaped the house, Colina did not want to go to police because she was scared. This evidence was sufficient to prove that Appellant communicated a threat to commit violence against Colina with the intent to terrorize her, thus supporting his terroristic threats conviction. Additionally, Appellant's threat to shoot Colina in the face, while pointing a gun in her and

Presher's direction, was sufficient proof that he attempted, by physical menace, to put Colina in fear of serious bodily injury. Therefore, his simple assault conviction against Colina was supported by sufficient evidence.

Appellant also challenges the sufficiency of the evidence to sustain his conviction of persons not to possess a firearm.

> In order to obtain a conviction under 18 Pa.C.S. § 6105, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a firearm and that he was convicted of an enumerated offense that prohibits him from possessing, using, controlling, or transferring a firearm. The term "firearm" is defined in that section as any weapon that is "designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon." 18 Pa.C.S. § 6105(i).

***Commonwealth v. Thomas***, 988 A.2d 669, 670 (Pa. Super. 2009).

Appellant initially contends that the Commonwealth failed to prove that he possessed the firearm found in Thomas Berry's yard. We disagree. Tiffany Presher testified that she saw Appellant in possession of a small black handgun. Officer Berry testified that a short time after Presher's argument with Appellant, he pursued Appellant through a yard and over a chain link fence. Berry observed Officer Smith chasing Appellant, and immediately thereafter noticed a small gun in his yard close to his fence. That gun had not been there when Berry was in his yard minutes before Officer Smith's pursuit of Appellant. This circumstantial evidence was sufficient for the jury to infer that Appellant possessed the gun that was found in Berry's yard.

Appellant additionally contends that the evidence was insufficient to prove that the gun was a 'firearm,' as that term is defined by section 6105:

- 12 -

> **(i) Firearm.--**As used in this section only, the term "firearm" shall include any weapons which are designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon.

18 Pa.C.S. § 6105(i).

Appellant argues that "the testimony … was insufficient to show that the object was readily convertible to fire a projectile by way of explosive" because Officer Obarto testified that "the object was lacking a significant number of parts, such that any conversion to be able to fire a projectile would certainly not be readily accomplished."  Appellant's Brief at 33-34.  He also maintains that "the object was missing so many parts that the trier of fact should not have been permitted to consider it as the frame or receiver of an object that could be readily convertible to fire a projectile by way of explosive, without the testimony of an expert in the matter."  *Id.* at 34.

In **Commonwealth v. Thomas**, 988 A.2d 669 (Pa. Super. 2009), this Court held that,

> [t]he statutory language [of section 6105] is clear, and **it does not require proof that the weapon was capable of expelling a projectile when it was seized**; on the contrary, the fact that a person can be prosecuted simply for possessing a semiautomatic pistol frame refutes this notion because the frame requires additional parts, *e.g.*, a slide and barrel, in order to fire a bullet.[3]  Thus, the use of the terms "frame" and "receiver" in section 6105(i) demonstrates that the legislature sought to eliminate the operability requirement articulated in [**Commonwealth v.**] **Layton**[, 307 A.2d 843 (Pa. 1973),] for purposes of this section.
>
> > [3] The frame of a semiautomatic pistol is the portion of the weapon that houses the trigger and bears a serial number that must be recorded whenever a complete pistol or pistol frame is transferred through a federal firearms licensee ("FFL") to a new owner.  Other gun parts such as barrels,

> slides, triggers, firing pins, and magazines are not regulated in this manner and may be purchased from the manufacturer or other vendors without the assistance of an FFL. The definition of firearm codified at 18 Pa.C.S. § 6105(i) and § 6106(e) is consistent with the federal government's view that the frame of the weapon is a firearm, even if it cannot fire ammunition due to a missing barrel, trigger, or other necessary components.

**Thomas**, 988 A.2d at 672 (emphasis added).

Clearly, our decision in **Thomas** defeats Appellant's argument that the evidence was insufficient to convict him under section 6105 because the firearm was not operable, as operability is not a requirement of that provision. Moreover, **Thomas** elucidates that the frame of a gun, which houses a trigger, constitutes a 'firearm' under section 6105. Here, the evidence was sufficient to circumstantially prove that Appellant possessed at least the frame of a gun. Notably, Officer Obarto was shown the gun at trial, and explained what he was observing as follows:

> [Officer Obarto:] This part[ is] basically the **main frame of the gun.** This is the recoil spring, the barrel, magazine, holder, **trigger**. This is the slide, we call it a slide. Sight pin. The slide fits on the barrel as such.

N.T. Trial at 167 (emphasis added). Officer Obarto also testified that the gun could be fired "with the insertion of a pin" into a hole on the weapon. **Id.** at 168. While on cross-examination, Officer Obarto acknowledged that various, inner parts of the gun were missing, he never retracted his prior testimony that the main frame of the gun was there, or that the gun could be fired with the insertion of a firing pin.

Additionally, Officer Smith testified that the gun had a slide, grips, barrel, the trigger, and a magazine, which did not have any bullets in it, but "was inside of the grip" when he found the gun. *Id.* at 132. While the gun was found in two pieces, it was able to be assembled into one piece, as confirmed by Officer Smith during his testimony at trial. *Id.* at 131.

We conclude that the totality of this testimony, viewed in the light most favorable to the Commonwealth, was sufficient to prove that the gun possessed by Appellant was at least the frame of a pistol, which qualifies as a firearm under section 6105. Therefore, the evidence was sufficient to prove that Appellant possessed a firearm as defined by that provision.

In Appellant's final issue on appeal, he claims that the jury's verdict was against the weight of the evidence pertaining to his convictions of terroristic threats and simple assault against Jennifer Colina, and his conviction of persons not to possess a firearm.

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

***Commonwealth v. Houser***, 18 A.3d 1128, 1135-36 (Pa. 2011) (citations and internal quotation marks omitted).

In support of Appellant's weight claim, he simply reiterates the same arguments presented in his challenges to the sufficiency of the evidence. In rejecting these claims, the trial court detailed the above-discussed trial testimony, and then concluded that,

> [t]he jury had the opportunity to hear witness testimony, observe witness demeanor, judge witness credibility and receive[d] appropriate instructions from the trial judge. There is nothing to suggest that the jury verdict was so contrary to the weight of the evidence that it would shock one's sense of justice.

Trial Court Post[-]Sentence Motion Opinion and Order, 5/9/17, at 15 (unnumbered).

Given our discussion of Appellant's sufficiency arguments, which he reiterates in support of his weight challenge, we discern no abuse of discretion in the trial court's decision. Appellant's terroristic threats and simple assault convictions against Colina were clearly supported by Presher's testimony. Moreover, Presher testified that she saw Appellant with a gun, and a gun was found in close physical and temporal proximity to Appellant's path of flight from Officer Smith. Although Officer Obarto testified that many pieces of that gun were missing, the jury was presented with testimony establishing that Appellant possessed at least the frame of a pistol. Consequently, the trial court's rejection of Appellant's weight-of-the-evidence challenge was not an abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/23/2018</u>